NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIK D. HOVE, ) | |
| ) | Hon. Garrett E. Brown, Jr. |
| Plaintiff, ) | |
| ) | Civil Action No. 10-1876 (GEB) |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| JAMES CLEARY, MONMOUTH REGIONAL ) | |
| HIGH SCHOOL, VICKI SMITH, and MARIA ) | |
| PARRY, ) | |
| ) | |
| Defendants. ) | |

**BROWN, Chief Judge:**

This matter comes before the Court upon the motions for summary judgment (Doc. Nos. 7, 9) filed by Defendants James Cleary, Monmouth Regional High School ("MRHS"), Maria Parry, and Vicki Smith (collectively "Defendants"). Defendants seek summary judgment and/or dismissal of all causes of action filed by Plaintiff Erik D. Hove. For the reasons that follow, the Court will grant summary judgment in favor of Defendants for claims I–V, and the Court will dismiss claim VI for lack of subject matter jurisdiction.

**I.    BACKGROUND**

This case involves allegations of employment discrimination against a school bus driver on the basis of disability and gender, as well as unlawful drug-testing practices and disclosure of medical records. In discussing the relevant facts, the Court draws all reasonable inferences in favor of Plaintiff, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff worked as a bus driver for the MRHS beginning in 1988. (Compl. at ¶1; MRHS Defs.' 56.1 Statement ¶ 3(F).) Defendant Smith was Plaintiff's supervisor as the MRHS Transportation Supervisor. (MRHS Defs.' 56.1 Statement ¶ 4(A); Pl.'s 56.1 Resp. ¶ 5.) Defendant Parry was Defendant Smith's supervisor as the MRHS Board of Education's Business Administrator. (MRHS Defs.' 56.1 Statement ¶ 5(A); Pl.'s 56.1 Resp. ¶ 9.) Defendant Cleary was the MRHS Superintendent of Schools. (MRHS Defs.' 56.1 Statement ¶ 6(A); Pl.'s 56.1 Resp. ¶ 9.) Plaintiff, who was married to Ms. Smith's daughter, began to have marital problems in or about 2000, when Plaintiff's wife allegedly started an affair. These marital problems allegedly led Plaintiff to suffer from depression and ultimately led Plaintiff to attempt suicide in September 2007 and again in January 2008. During this time frame, Plaintiff also suffered a torn rotator cuff, and he underwent shoulder surgery in November 2007. Following the operation, Plaintiff was on disability leave from work between November 2007 and June 2008. (MRHS Defs.' 56.1 Statement ¶ 3(I–K, Q); Pl.'s 56.1 Resp. ¶¶ 1, 11; Compl. ¶ 6.) The parties agree that, prior to the fall of 2008, Plaintiff had no disciplinary problems at work. (MRHS Defs.' 56.1 Statement ¶ 3(X).)

Upon returning from disability leave, Plaintiff attended a "welcome back" meeting for the school's bus drivers in August 2008, whereupon Mr. Cleary noticed that Plaintiff appeared disheveled, lethargic, and out of the ordinary. Mr. Cleary, who knew Plaintiff personally and understood that Plaintiff was dealing with marital difficulties and had attempted suicide, asked to meet with Plaintiff privately. Plaintiff informed Mr. Cleary that he was going through a difficult time, that he was under a doctor's care, and that he may have unintentionally abused prescription medications. As a result of this conversation and out of concern for Plaintiff's ability to safely

operate as a school bus driver, Mr. Cleary asked Plaintiff to undergo drug and psychological testing, and Plaintiff agreed.  (MRHS Defs.' 56.1 Statement ¶ 6; Pl.'s 56.1 Resp. ¶ 9.)  Plaintiff passed these tests.  Although the Complaint only referred to this blood-testing incident, Plaintiff now alleges that he was subjected to additional blood tests in or about June 2008 and October 2008.  According to Plaintiff, Ms. Smith demanded that he submit to a "Return to Work" drug test, which is administered to employees who have previously failed a drug or alcohol test, when he returned to work in June 2008, and he received a third drug test in October 2008 after a police officer pulled him over, while driving a full school bus, for suspicion of driving while intoxicated.  (*See* Pl.'s Certif. at 3, 8.)  Plaintiff apparently passed these tests.  It is undisputed that, over a four-month period from November 2008 to March 2009, Plaintiff was late to work or did not show up to work on five occasions.  Plaintiff was also involved in three at-fault traffic accidents over a six week period in the beginning of 2009.  (MRHS Defs.' 56.1 Statement ¶ 3(X–Y); Pl.'s 56.1 Resp. ¶¶ 1, 9.)  In addition, Plaintiff admitted during his deposition that the school may have received a complaint in October 2008 that he was driving erratically.  (Reilly Certif. Ex. C ("Hove Dep.") at 136.)  The MRHS Board of Education held a meeting on March 31, 2009 and terminated Plaintiff's employment.  According to Ms. Parry, the MRHS Board of Education's Business Administrator, Plaintiff's termination "was the combined result of the five failures to either show up or call out between October 23, 2008 and March 11, 2009 and the three at fault accidents in a six week period between February 2, 2009 and March 23, 2009."  (Reilly Certif. Ex. I ¶¶ 9–10.)

      Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Monmouth Vicinage on February 7, 2010.  Plaintiff's Complaint presented claims under 42 U.S.C. § 1983;

the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1181; the New Jersey Civil Rights Act, and the New Jersey Law Against Discrimination (NJLAD). Plaintiff's claims allege violation of his constitutional rights to due process and to be free from unreasonable searches and seizures, gender and disability discrimination, and unlawful disclosure of medical records.   Defendants timely removed the matter to this Court for the District of New Jersey pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction.  Defendants now move for summary judgment or dismissal of all claims, asserting *inter alia* that Plaintiff has not put forth colorable evidence substantiating his claims, and that there is no private right of action under HIPAA.  Plaintiff filed a two-page response brief, which only appears to address Plaintiff's NJLAD claim of disability discrimination.  Plaintiff also filed a responsive statement pursuant to Local Civil Rule 56.1, that is supported entirely by Plaintiff's unsworn certification. In his response brief, Plaintiff contends that Defendants failed to make reasonable accommodations for Plaintiff, who was under psychiatric care and taking medications.  (*See* Pl.'s Br. at 1–2.)

**II.   ANALYSIS**

   *A.  Summary Judgment*

   A party seeking summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Matsushita*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Defendants challenge the sufficiency of Plaintiff's proofs on all claims. This Court has federal question jurisdiction over Plaintiff's § 1983 claim pursuant to 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

  B. *Gender Discrimination Claims Under N.J. Stat. Ann. § 10:5-1, et seq.*

Gender discrimination claims under the NJLAD are analyzed under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 595 (1988); *see also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999). *McDonnell Douglas* analysis consists of three steps: first, a plaintiff must present sufficient evidence to present a prima facie case of discrimination; second, if the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment decision; third, if the defendant presents such justification, the burden of production shifts back to the plaintiff, who must prove by a preponderance of the evidence that the defendant's nondiscriminatory reasons were merely pretext for discrimination. *E.g.*, *Clowes*, 109 N.J. at 596; *Dooley v. Roche Labs., Inc.*, Civ. No. 04-2276, 2007 WL 556885, at *5 (D.N.J. Feb. 15, 2007). Generally, in order to set forth a prima facie case of discrimination, "a plaintiff must show that he or she (1)

5

belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person." *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 14 (2002).

Defendants contend that Plaintiff has not put forth evidence of disparate treatment or purposeful discrimination on the basis of gender. Plaintiff does not dispute this contention in his response brief, and Plaintiff does not appear to present either argument or evidence in his certification that would put this issue in dispute.

Plaintiff's first cause of action alleges that "[f]emale drivers get more hours, hourly assignments, and more opportunity for overtime than male drivers." (Compl. ¶ 20). Plaintiff presents no evidence to support this contention. Plaintiff also alleged in the first cause of action that he "was denied his past custom and practice of doing maintenance work on the buses as part of his regular duties, in order to reduce his hours to his detriment." (Compl. at ¶ 21.) It is not disputed that Plaintiff had previously conducted maintenance on the buses, but upon returning to work in summer 2008 was not allowed to continue to perform maintenance work on the buses. (MRHS Defs.' 56.1 Statement ¶ 3(S).) However, Plaintiff has not provided any evidence that would suggest that this decision was gender-based.

In the second cause of action Plaintiff alleged "Defendants' sanction on Plaintiff due to his driving record was more severe than that meted out to female drivers similarly situated." (Compl. at ¶ 23.) The evidence offered by Plaintiff in his certification does not support this claim. Plaintiff notes in his certification that a female driver was involved in two traffic accidents, but the school did not report the matter to the police or file an insurance claim. (Pl.'s

Certif. at 13.) Yet, accepting this assertion as true, Plaintiff has not shown disparate treatment, because this driver is not similarly situated. Plaintiff does not dispute Defendants' contention that "[N]o other driver, male or female, had three at fault accidents in a six-week period" between April 2003 and March 2009. (MRHS Defs.' 56.1 Statement ¶ 8; Pl.'s 56.1 Resp. ¶ 9.)

Plaintiff has put forth no colorable evidence or legal argument to support his gender discrimination claims. Furthermore, Plaintiff does not present any evidence indicating that Defendants' stated reason for terminating his employment—three at-fault accidents in six weeks and five failures to show up for work on time in a four-month period—was pretext for unlawful gender discrimination. Consequently, the Court will grant summary judgment in favor of Defendants on these claims.

    C. *Disability Discrimination Claim Under N.J. Stat. Ann. 10:5-1, et seq.*

The NJLAD also prohibits discrimination on the basis of disability. An employee who claims disability discrimination in violation of NJLAD must show they were "qualified to perform the essential functions of the position of employment, with or without accommodation." *Victor v. State*, 401 N.J. Super. 596, 609 (App. Div. 2008). The NJLAD also "requires an employer to reasonably accommodate an employee's handicap." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 396 (App. Div. 2002). To show disability discrimination, an employee must show:

> (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* at 400–01 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–320 (3d Cir. 1999)).

Here, Plaintiff asserts he was depressed and was taking medication for the depression, which caused him to oversleep and be late for work. (Pl.'s Resp. Br. at 1.) Plaintiff further contends he informed Defendants his medication would cause him to oversleep. (*Id.*) Notably, this theory of disability did not appear in the Complaint. Rather, Plaintiff averred that he suffered a "torn rotator cuff" in 2007, and that by November 2008, he had developed a "left arm palsy" that did not interfere with this his ability to drive the school bus. (Compl. ¶¶ 6, 8.) According to the Complaint, "Plaintiff was terminated on March 30, 2009 as unable to do his job due to his left arm palsy." (Compl. ¶ 19.) The Complaint makes no mention of his depression or medication being the basis for disability discrimination, and Plaintiff may not amend his pleadings simply by offering argument in response to a motion for summary judgment. Furthermore, even if the Court accepted Plaintiff's new theory of disability discrimination, Plaintiff has provided no evidence that he ever requested assistance or accommodation for this disability. While a request for accommodation need not be formal or even made with a specific accommodation in mind, the request must nevertheless be made. *Tynan*, 351 N.J. Super. at 400. Plaintiff only argues that "when his attendance became an issue, [Defendants] made no effort to work with him and make an accommodation for his disability." (Pl.'s Resp. Br. at 1.) Plaintiff does not explain how Defendants could have made a reasonable accommodation for his asserted disabilities, considering that his position entailed driving children to school in time for the beginning of the school day. Indeed, Plaintiff's own deposition testimony indicated that he was late to work because he did not hear the alarm clock in the morning, or because of a power

8

failure. (Hove Dep. at 177–78.)[1]

Plaintiff has not made a *prima facie* case of disability discrimination, and he has not presented evidence suggesting that his termination was pretext for unlawful disability-based discrimination. Rather, the record reflects that Plaintiff was terminated following three at-fault accidents while driving a school bus, and five late arrivals for work. Plaintiff does not present colorable evidence that would place these essential facts in dispute. Accordingly, the Court will grant summary judgment in favor of Defendants on this claim.

*D. Due Process & Search and Seizure Claims*

Plaintiff's fourth and fifth causes of action allege violations of his rights to be free from unreasonable searches and seizures and to due process of law. Plaintiff brings these claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2. "To state a claim for relief in an action brought under [section] 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). The analysis of constitutional violations under the New Jersey Civil Rights Act tracks the analysis of a § 1983 claim. *See, e.g.*, *Rezem Family Assocs., LP v. Borough of Millstone*, 2011 N.J. Super. LEXIS 64, *14–15 (App. Div. Apr. 15, 2011). Plaintiff's

---

[1]The Court notes that Plaintiff's 56.1 Response and certification asserts that he was assigned to a bus with a defective door mechanism when he returned to work from disability leave, and that when he asked his supervisors to assign him a different bus, they refused. (*See, e.g.*, Pl.'s 56.1 Resp. ¶ 13.) However, such allegations have no bearing on the disability discrimination claim actually made in the Complaint, and Plaintiff's response brief does not rely on this theory of disability discrimination, opting instead to present another theory of disability discrimination unrelated to the one advanced in his pleadings. Plaintiff has not properly pleaded a disability discrimination claim on this basis, and the Court will not permit Plaintiff to amend his pleadings at this stage with self-serving argument.

Complaint alleges that Defendants, state actors, violated his Fourth and Fourteenth Amendment rights by requiring him to submit to drug testing. It is undisputed that Plaintiff underwent drug-testing at the behest of Defendants, though it is unclear how many times Plaintiff was tested during the relevant time period. Defendants argue that courts have rejected Fourth Amendment challenges to New Jersey's law that permits boards of education to conduct "psychiatric or physical examinations" of a school employee, when that employee "shows evidence of deviation from normal, physical or mental health." (MRHS Defs.' Br. at 29 (citing N.J. Stat. Ann. § 18:16-2).)  Defendants also note that courts have given greater deference to searches of school employees who are entrusted with the safety of school children. (*Id.*) Plaintiff's response brief does not oppose Defendants' arguments for summary judgment.

      The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amendment IV.  "Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place. The determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.'" *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985) (citation omitted). "In the case of searches conducted by a public employer, we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." *O'Connor v. Ortega*, 480 U.S. 709, 720 (1987). In determining whether the search was "reasonable," for purposes of the Fourth Amendment, this Court must consider whether the search was "justified at its inception," and whether the search as

conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341 (citations omitted).

It is undisputed that blood and urine-testing constitutes a search for purposes of Fourth Amendment analysis. *See, e.g.*, *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616 (1989). A number of courts have recognized that a public employer has a sufficient governmental interest to perform routine, suspicionless drug screenings on an employee, where the employee's work makes that employee directly responsible for public safety. *See, e.g.*, *N.J. Transit PBA Local 304 v. N.J. Transit Corp.*, 384 N.J. Super. 512, 519 (App. Div. 2006) (finding no federal or state constitutional violation from policy requiring suspicionless, annual medical examinations and drug screenings of transit police officers); *Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 194A v. Burlington County Bridge Comm'n*, 240 N.J. Super. 9, 11 (App. Div. 1990) (finding that, consistent with the Fourth Amendment, bridge operators may be subject to annual drug screenings that are conducted as part of an annual physical examination). Courts have also recognized a heightened governmental interest in performing drug tests on school employees that are responsible for the safety of school children. *See, e.g.*, *Jones v. McKenzie*, 833 F.2d 335, 339–41 (D.C. Cir. 1987), as amended by *Jones v. Jenkins*, 878 F.2d 1476 (D.C. Cir. 1989).

The only drug test mentioned by the Complaint was the drug test that occurred after the August 2008 "welcome back" meeting for school drivers, which Plaintiff averred was precipitated by Ms. Smith's accusation that he was abusing prescription drugs. (Compl. ¶ 10.) As noted above, Plaintiff now appears to complain of additional drug tests that occurred before and after this test: one that occurred when he returned to work in June 2008, and another that was

administered in October 2008 after he was pulled over by a police officer on suspicion of driving while intoxicated.

With regard to the post-meeting drug test in or about August 2008, Plaintiff's certification now asserts that Mr. Cleary, *not* Ms. Smith, accused him of being under the influence of drugs. (Pl.'s Certif. at 8.) Furthermore, Plaintiff's 56.1 Response does not contest Defendants' claim, based upon Mr. Cleary's deposition testimony, that Mr. Cleary observed Plaintiff to be disheveled, lethargic, and using slurred speech around the time of the "welcome back" meeting in August 2008, and that Plaintiff stated that he may have been abusing prescription medications. (MRHS Defs.' 56.1 Statement ¶ 6(D–H); Reilly Certif. Ex. H at 7–11; Pl.'s 56.1 Resp. ¶ 9.[2]) Under these circumstances, it appears that MRHS Defendants had particularized suspicion for conducting the drug test. Plaintiff offers no legal theory for how this drug test violated his Fourth Amendment rights. Considering that Plaintiff was a bus driver directly charged with safely

---

[2]The Court notes that Mr. Cleary's description of Plaintiff at the "welcome back" meeting was corroborated by the deposition testimony of Ms. Smith. (MRHS Defs.' 56.1 Statement ¶ 4(N); Reilly Certif. Ex. D at 13–15.) A portion of Plaintiff's certification appears to challenge the veracity of Mr. Cleary's and Ms. Smith's account of the "welcome back" meeting, noting that "[n]othing was said about [him] being disheveled or slurring [his] words," at the "welcome back" meeting, but when he met with Mr. Cleary shortly after the meeting, "[he] was then accused by Mr. Cleary of being under the influence of drugs. [Mr. Cleary] claimed that he saw my eyes being glassy when we were speaking earlier, that I was slurring my words and was disheveled in appearance." (Pl.'s Certif. at 8.) Plaintiff counters that Mr. Cleary "could not have seen [his] eyes 'glassy' when he came down to the garage because [they] were outside and [he] was wearing photo sensitive lenses." (*Id.*) Plaintiff also points out that, despite their concerns over his appearance, Defendants let Plaintiff drive home, which was more than twenty miles away. (*Id.*)

Notably, however, Plaintiff does not dispute Mr. Cleary's or Ms. Smith's deposition testimony that he appeared disheveled, that his words were slurred, or that he told Mr. Cleary that he may have been abusing prescription drugs. Nor does Plaintiff present any evidence that would put these claims in doubt. Consequently, the Court treats these essential portions of Mr. Cleary's and Ms. Smith's testimony as unopposed.

transporting children to and from school, and considering that Mr. Cleary knew that Plaintiff had attempted suicide on two prior occasions, this Court concludes that the drug test required by Defendants was reasonable under the circumstances. Thus, the Court will grant Defendants' motion and enter summary judgment in favor of Defendants and against Plaintiff on Plaintiff's Fourth Amendment claim premised on the August 2008 drug test.

      As for the newly alleged drug tests, which exceed the scope of the Complaint, the Court notes that Plaintiff does not dispute that Defendants knew that he had attempted suicide on two prior occasions, or that the latter blood test took place after he was pulled over on suspicion of driving while intoxicated. Plaintiff does contest the circumstances that caused him to be pulled over (*see* Pl.'s Certif. at 10–11), but he provides no colorable evidence indicating that the encounter was pretextual, or that MRHS Defendants had reason to believe that the traffic stop was made in bad faith. Where the allegations in the Complaint, taken as true, reveal a deficiency in a plaintiff's claim, the Court may dismiss claims *sua sponte* under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Bintliff-Ritchie v. Arn. Reinsurance Co.*, No. 07-1527, 285 F. App'x 940, 943 (3d Cir. 2008); *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). Because Plaintiff did not include any details regarding these additional drug tests in his pleadings, and because Plaintiff does not now provide a legal theory for how these purported tests violated his Fourth Amendment rights, the Court cannot assess the merits of these putative

claims.³ Thus, to the extent that Plaintiff bases his Fourth Amendment claim on drug tests other than the August 2008 drug test, this claim is dismissed.

    *E. HIPAA Claim Under 29 U.S.C. § 1181*

Plaintiff's sixth cause of action alleges that Defendants violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1181, by allowing his confidential medical information to be faxed to a common usage fax machine at the school. (Compl. ¶ 32.) Defendants argue that Plaintiff has presented no evidence that confidential medical information was actually disclosed, and in any event, that there is no private right of action under HIPAA. Plaintiff does not oppose these contentions.

In *Buchanan v. Gay*, a federal court in the District of Delaware noted that while the U.S. Court of Appeals for the Third Circuit has not addressed the issue, several other federal courts have found that HIPAA does not create a private right. The *Buchanan* court therefore dismissed the HIPAA claim for lack of jurisdiction. 491 F. Supp. 2d 483, 496–97 (D. Del. 2007) (citing

---

    ³Although Plaintiff styled this claim as one sounding in due process in his Complaint, Plaintiff fails to explain how these drug tests violated his due process rights. Plaintiff does not assert that Defendants' actions deprived him of a fundamental right or a liberty or property interest, and Plaintiff does not suggest that additional process would have safeguarded his rights. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (explaining that the procedural due process inquiry entails "consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"); *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (explaining that "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience'"). Indeed, it appears that Plaintiff's termination had nothing to do with the drug tests, but instead with his three at-fault accidents and his poor attendance record. Thus, to the extent that Plaintiff's drug-testing claim asserts a violation of due process, Plaintiff has not presented any evidence or legal theory to support this claim, and this claim must be dismissed.

*Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *Agee v. United States*, 72 Fed. Cl. 284 (Fed. Cl. 2006); *Carney v. Snyder*, No. C.A. 06-23 ERIE, 2006 WL 2372007 (W.D.Pa. Aug.15, 2006); *Rigaud v. Garofalo*, No. Civ.A. 04-1866, 2005 WL 1030196 (E.D.Pa. May 2, 2005); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F. Supp. 2d 1176, 1179–80 (D. Wyo. 2001); *Wright v. Combined Insur. Co. of Am.*, 959 F. Supp. 356, 362–63 (N.D. Miss. 1997).  Recently, the U.S. Court of Appeals for the Seventh, Eighth, Ninth, and Tenth Circuits have joined this line of authority, recognizing that HIPAA does not create a private right of action.  *Carpenter v. Phillips*, No. 10–3176, 2011 WL 1740102, at *1 (7th Cir. May 4, 2011) (slip order); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010).  This Court finds the above decisions to be persuasive.  Accordingly, the Court will dismiss Plaintiff's HIPAA claim for lack of jurisdiction.

### III.    CONCLUSION

For the reasons stated herein, Defendants' motions (Doc. Nos. 7, 9) will be granted, and this Court will enter summary judgment in favor of Defendants and against Plaintiff on Counts I–V of the Complaint.  The Court will dismiss Plaintiff's HIPAA claim, Count VI, for lack of subject matter jurisdiction.  An appropriate form of order is filed herewith.


Dated: June 6, 2011

             /s/ Garrett E. Brown, Jr.
            GARRETT E. BROWN, JR. U.S.D.J.